IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DORIS M. JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:21-cv-242-SMD |
| | ) |
| KILOLO KIJAKAZI, | ) |
| *Acting Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) |

**OPINION & ORDER**

Plaintiff Doris M. Jackson ("Jackson") applied for a period of disability and supplemental security income ("SSI") on November 19, 2018, and disability insurance benefits ("DIB") on February 21, 2019, alleging she became disabled on May 15, 2018. (Tr. 178-85). Jackson's applications were denied at the initial administrative level on April 10, 2019. (Tr. 113-14). She then requested and received a hearing before an Administrative Law Judge ("ALJ"), who found on April 1, 2020, that Jackson was not disabled. (Tr. 17-35). Jackson appealed to the Social Security Appeals Council ("Appeals Council"), which denied review. (Tr. 1-7). Therefore, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Jackson appeals that decision under 42 U.S.C. § 405(g). For the reasons that follow, the undersigned AFFIRMS the Commissioner's decision.[1]

---

[1] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 14); Def.'s Consent (Doc. 13).

**I.     STATUTORY FRAMEWORK**

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite her impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ

---

[2] *McDaniel* is an SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy the claimant can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[3] or (2) the testimony of a vocational expert ("VE").[4] *Id.* at 1239-40.

## II.  STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the correct legal standards were applied. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence, or the proper legal standards were not applied in the administrative proceedings. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

---

[3] The Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[4] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F. 2d at 1145.

### III. ADMINISTRATIVE PROCEEDINGS

Jackson was 57 years old on her alleged disability onset date. (Tr. 178). She has a high school diploma and past relevant work experience as an industrial cleaner and a supervisor of janitorial services. (Tr. 30, 48). Jackson alleged disability due to degenerative disc disease, facet joint osteoarthritis, central spinal canal stenosis, a spinal disc protrusion at the L4-L5 level, anxiety, suicidal ideation, and depression. (Tr. 266).

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process for Jackson's disability determination. At step one, the ALJ found that Jackson has not engaged in substantial gainful activity since May 15, 2018, her alleged onset date. (Tr. 22). At step two, the ALJ found that Jackson suffers from the following severe impairments: degenerative disc disease and depression. (Tr. 22). At step three, the ALJ found Jackson does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 23).

The ALJ proceeded to determine Jackson's RFC, holding she has the capacity to perform medium work as defined by 20 C.F.R. § 404.1567(c) with some additional postural, environmental, and mental limitations. (Tr. 24-25). At step four, the ALJ found Jackson can perform past relevant work as an industrial cleaner. (Tr. 30). Accordingly, the ALJ found Jackson was "not disabled" from May 15, 2018, through the decision date of April 1, 2020. (Tr. 30-31).

## IV.     JACKSON'S ARGUMENTS

Jackson argues the ALJ improperly rejected her treating physician's medical opinions regarding the severity of Jackson's physical and mental limitations. Pl.'s Br. (Doc. 15) at 2-11. Additionally, Jackson contests the ALJ's authority to decide his claim and seeks a *de novo* review before a new ALJ. *Id.* at 11-13; Reply (Doc. 24) at 1-9. The undersigned finds neither remand nor a *de novo* review are appropriate.

## V.     ANALYSIS

### A.     Substantial Evidence Supports the ALJ's Finding that Dr. Hemberg's Opinion is Unpersuasive

Jackson asserts the ALJ erroneously declined to find persuasive the limitation opinions—both physical and mental—offered by her treating physician, Eric Hemberg, M.D. Pl.'s Br. (Doc. 15) at 8. First, Jackson claims the ALJ impermissibly relied on Jackson's treatment history—the number of Jackson's visits to Dr. Hemberg—in determining the severity of Jackson's limitations. *Id.* Second, Jackson maintains the ALJ mischaracterized the evidence in the record by selectively referring to certain medical records while ignoring relevant others. *Id.* at 8-9. Third, Jackson contends the ALJ

improperly focused on the lack of mentions in the record of positive straight leg raises and discussion of surgery and injection therapy, which Jackson asserts amounts to the ALJ's lay medical preference. *Id.* at 9. Finally, Jackson claims the ALJ incorrectly discredited Dr. Hemberg's opinions based on statements made by Jackson about her daily activities. *Id.* at 9-10. Accordingly, Jackson offers, "[a]t the very least, the only reasonable finding is that Dr. Hemberg's opinion is at least as persuasive as the State Agency administrative findings." *Id.* at 10.

Meanwhile, the Commissioner responds that the ALJ properly supported his conclusions regarding the supportability and consistency of Dr. Hemberg's opinions. Comm'r Resp. (Doc. 19) at 6. On supportability, the Commissioner argues the ALJ properly noted that none of Dr. Hemberg's medical records indicates more than a moderate limitation based on Jackson's physical and mental conditions; thus, the Commissioner contends Dr. Hemberg's prior findings do not support his later significant limitation opinions. *Id.* Likewise, the Commissioner claims the ALJ properly found Dr. Hemberg's opinions inconsistent with Dr. Babb's examination and the other medical evidence. *Id.*

The Social Security Regulations direct how the ALJ evaluates medical opinions.[5] When evaluating a medical opinion's persuasiveness, an ALJ may consider the factors of supportability, consistency, relationship with the claimant, specialization, and other facts tending to support or contradict the opinion. 20 C.F.R. § 404.1520c(c)(1)-(3).

---

[5] Jackson filed her SSI and DIB claims on November 19, 2018, and February 21, 2019, respectively. Tr. 178-85. Therefore, 20 C.F.R. § 404.1520c controls the weight given to the medical opinions because the claim was filed after March 27, 2017.

Supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(b)(2). While an ALJ need not articulate how he applied each factor to the medical source opinion, the ALJ must state more than broad conclusions, at least with respect to supportability and consistency. *Works v. Saul*, 2021 WL 690126, at *15 (N.D. Ala. Feb. 23, 2021). Otherwise, a reviewing court cannot meaningfully assess the ALJ's consideration of the opinion. *Id.*

Jackson first argues the ALJ improperly considered the number of her visits to Dr. Hemberg in finding his opinion unpersuasive. The ALJ noted Jackson visited Dr. Hemberg only seven times over a two-year period. Tr. 26. Jackson says the ALJ should have considered "that the State Agency administrative findings are based on no history of treatment, or even physical examination." Pl.'s Br. (Doc. 15) at 8. Yet, Jackson misunderstands the standard of review. As noted, this Court is not empowered to reweigh the evidence before the ALJ to determine the weight each piece of evidence should be assigned. Instead, this Court's job is to assess whether the ALJ's decision is supported by substantial evidence. *See Cornelius*, 936 F. 2d at 1145. Thus, scrutinizing the ALJ's failure to discount the state agency's findings because they were not based on treatment history or a physical examination—as the ALJ did with Dr. Hemberg's opinion because it was only supported by seven visits in two years—would require reweighing the evidence. The undersigned declines to do so. The ALJ's consideration of the number of Jackson's visits to Dr. Hemberg over a two-year period is not reversable error.

Second, Jackson claims the ALJ mischaracterized the evidence by highlighting certain medical records and ignoring other pertinent entries. Jackson specifically points to three instances of the ALJ's selective reliance: (1) "the ALJ failed to acknowledge that

7

multiple physical examinations also revealed decreased range of motion of the neck;" (2) "the record shows that none of the physical examinations from the office records referenced by the ALJ were completely normal;" and (3) the ALJ "failed to acknowledge all of the abnormalities revealed during [the MRI] imaging[.]" Pl.'s Br. (Doc. 15) at 8-9.

Here, again, the question is not whether the ALJ's decision is supported by all the available evidence but, rather, whether the ALJ's decision is supported by substantial evidence. Each of Jackson's arguments maintain the ALJ considered the evidentiary record but gleaned the wrong conclusion by focusing on certain aspects of the records that were not helpful to Jackson's case. Jackson does not claim, however, that the ALJ ignored the evidence or wrongly pointed to certain medical records. Thus, Jackson is asking this Court to reweigh the available evidence to tilt in Jackson's favor. Nevertheless, substantial evidence supports the ALJ's conclusion.

For instance, Jackson says the ALJ erroneously relied on Dr. Hemberg's notes from multiple physical exams that showed Jackson had normal range of motion while ignoring that Dr. Hemberg also pointed out Jackson's decreased range of motion in other records. But Dr. Hemberg did acknowledge, on more than one occasion over her seven visits, Jackson exhibited normal range of motion upon examination. Tr. 307, 339, 400. Although Jackson may disagree with the evidence the ALJ relied upon to reach his decision, his decision was nevertheless supported by substantial evidence in the record.

Likewise, Jackson's assertion that the ALJ intentionally ignored abnormal findings in Dr. Hemberg's records does not necessitate remand. The ALJ said Dr. Hemberg's review of Jackson's musculoskeletal system was normal during most exams. Tr. 26. Jackson

claims this ignores abnormal findings in other records. Yet, Jackson points to no law requiring the ALJ to acknowledge in his decision every line of every medical record, nor does Jackson show that the medical records demonstrate the ALJ's finding was factually inaccurate. Accordingly, the ALJ's finding was supported by substantial evidence. Similarly, the ALJ's holding based on the MRI results from April 2015 notes abnormalities along with the normal findings; thus, nothing in the record suggests the ALJ ignored facts that Jackson claims support her position. Nevertheless, to say the ALJ should have more heavily credited the abnormalities in the MRI results would require this Court to impermissibly reweigh the evidence and substitute its judgment for the Commissioner's. Therefore, Jackson's argument that the ALJ erred by mischaracterizing Dr. Hemberg's records is unavailing.

Jackson next maintains the ALJ erred by referring to a lack of positive straight leg raises and discussion of injections or surgical intervention in Dr. Hemberg's records as a reason to find Dr. Hemberg's restrictive limitations opinions unpersuasive. Pl.'s Br. (Doc. 15) at 9. The ALJ buttressed his disregard for Dr. Hemberg's opinion through this evidence, which suggested only conservative treatment of Jackson's pain. The ALJ extrapolated from the lack of consideration of surgical intervention or injection therapy that Jackson's condition was not as severe as Dr. Hemberg's limitations opinion suggested. The lack of surgical or injection intervention does indicate conservative, non-invasive treatment for Jackson's condition. It was not improper for the ALJ to consider omissions in Dr. Hemberg's records in assessing the supportability of Dr. Hemberg's opinions. Jackson points to no law stating the ALJ is prohibited from relying on evidentiary omissions in

9

determining a medical source opinion's persuasiveness. Because the ALJ's opinion is supported by other evidence in the record, this is not a case in which the ALJ is ignoring a treating physician's opinion and substituting the ALJ's lay medical knowledge for a medical professional's. *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (holding an ALJ impermissibly substituted his lay medical opinion for that of a medical professional when the ALJ relied on observations of the claimant at the hearing to find claimant's pain was less than the claimant asserted). Accordingly, the ALJ's use of the lack of records indicating positive straight leg raises and surgical or injection intervention for Jackson's conditions in Dr. Hemberg's notes to support his finding that Dr. Hemberg's opinion is not persuasive was not reversible error.

Finally, Jackson claims the ALJ impermissibly removed context from Jackson's statements regarding her daily activities. *Id.* at 9-10. Specifically, the ALJ held Dr. Hemberg's opinion to be overly restrictive because Jackson engages in "significant daily activities, which include performing chores daily for 4 hours." Tr. 28. Jackson points to other parts of her statement that call into question the ALJ's characterization. Particularly, Jackson notes she mentioned she can do chores for up to 4 hours with breaks to rest and Jackson's daughter must help with the chores when Jackson's back hurts too badly. Thus, Jackson maintains 4 hours of chores throughout a day on an inconsistent basis is not the same as working full shifts for a normal week of work. Pl.'s Br. (Doc. 15) at 9-10. Again, here, Jackson is asking the Court to reweigh the evidence to credit parts of the record and discredit others. Yet, the ALJ's decision is supported by reference to the evidentiary record because Jackson did say she does chores every day for 4 hours per day. Tr. 227 ("How

much time does it take you, and how often do you do each of these [household chores]? [E]veryday. [sic] About 4 hours w/rest breaks."). Therefore, while Jackson may disagree that her doing daily household chores for four hours per day with rest breaks makes Dr. Hemberg's limitations opinion unpersuasive, the ALJ's decision is supported by the evidence.

In sum, substantial evidence supports the ALJ's decision that Dr. Hemberg's limitations opinion is overly restrictive and unpersuasive. Jackson's arguments ask the Court to reweigh the evidence in her favor, but she has not shown that the ALJ's decision was not supported by the record or applied an incorrect legal standard. Instead, Jackson concedes the ALJ pointed to accurate evidence in the record but suggests the ALJ should have based his decision on other evidence more favorable to Jackson. Even if the undersigned thought the proof preponderated against the ALJ's decision, this Court is not permitted to substitute its own judgment for the Commissioner's. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips*, 357 F.3d at 1240 n.8). sConsequently, the ALJ's finding that Dr. Hemberg's opinions were unpersuasive ia not reversable error.

### B. Jackson Is Not Entitled to a *De Novo* Hearing Before a New ALJ

Jackson argues that, on remand, a new ALJ should conduct a *de novo* hearing on her claim. Pl.'s Br. (Doc. 15) at 11-13. She contends this is necessary because on the date her claim was decided, Andrew Saul, the Commissioner of Social Security, was not subject to presidential removal. *Id.* at 11-12. As a result, Jackson asserts the ALJ who adjudicated her case, whose power was delegated to him by Saul, did not have constitutional authority

11

to do so, which deprived Jackson of a valid adjudicatory process. *Id.* at 12. Further, Jackson contends that because there was no valid Commissioner and, thus, the ALJ's authority was erroneous, the decisions below "suffer from the unconstitutional taint of having previously [been] heard and decided . . . [by an] ALJ [who] had no lawful authority[.]" *Id.* at 13.

Specifically, Jackson argues Saul was not validly appointed because he was subject to an unconstitutional removal provision.[6] *Id.* at 14. The removal provision provides that the Commissioner, who is appointed by the President and confirmed by the Senate, is removable by the President only for negligence or malfeasance in office. 42 U.S.C. § 902(a)(3). Jackson asserts that under recent Supreme Court precedent—i.e., *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020) and *Collins v. Yellen*, 141 S. Ct. 1761 (2021)—the removal provision is unconstitutional, thereby tainting Saul's authority and the ALJs to whom Saul delegated his authority. Pl.'s Br. (Doc. 15) at 13-14.

The Commissioner agrees the removal provision is unconstitutional insofar as the statute limits the President's authority to remove the Commissioner. Comm'r Resp. (Doc. 19) at 7 ("The parties agree that [the removal provision] violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause."). Because the Commissioner concedes this issue, the only

---

[6] Jackson contends the primary unconstitutional action here was the Commissioner's delegation of authority to the ALJ. Reply Br. (Doc. 24) at 5 ("SSA's 'properly appointed' argument is inapt because Plaintiff's argument has literally nothing to do with the ALJ or AC judge's appointment. Rather, the constitutional violation results from the improperly appointed [C]ommissioner's delegation of authority to the ALJ and/or AC judge."). Yet, Jackson provides no argument that the Commissioner—assuming *arguendo* he was otherwise constitutionally appointed—lacked the constitutional authority to delegate the task of determining disability in Jackson's case to the ALJ. Accordingly, Jackson's claim is that the Commissioner lacked the authority to delegate his duty to determine disability precisely because he was not constitutionally in power because of the erroneous removal provision. For conciseness and clarity, the undersigned only addresses, therefore, Jackson's request for *de novo* review because of the Commissioner's unconstitutional unremovable status.

remaining issue is whether the purportedly unconstitutional provision entitles Jackson to a *de novo* hearing before a new ALJ.[7]

In *Collins*, the Supreme Court held the Director of the Federal Housing Finance Agency ("FHFA") was subject to an unconstitutional removal provision like the one at issue here. 141 S. Ct. 1761, 1784 (2021). The Court reasoned that because the FHFA removal provision restricted the President's authority to remove the FHFA's director only for-cause, it violated separation of powers. *Id.* at 1783. However, the Court clarified that despite the unconstitutional for-cause limitation, the director's appointment was Constitutionally proper, and his actions were not automatically void. *Id.* at 1787.

Under *Collins*, then, the Social Security Administration's removal provision does not automatically void Saul's actions, nor does it deprive the ALJ who determined Jackson's claim of his authority to adjudicate Jackson's case. *See id.* at 1788 n. 23 ("[T]he unlawfulness of [a] removal provision does not strip [an officer] of the power to undertake the other responsibilities of his office[.]"). The removal provision is severable from the rest of the Social Security Act and does not divest the Commissioner of all authority or render all the Commissioner's decisions presumptively invalid. *See id.* at 1787 ("Although the statute unconstitutionally limited the President's authority to remove the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the [agency] . . . as void."); *see also Herring v. Comm'r of Soc. Sec.*, No. 2:21-CV-322-

---

[7] The undersigned assumes without finding that 42 U.S.C § 902(a)(3) is unconstitutional for purposes of this decision.

MRM, 2022 WL 2128801, at *5 (M.D. Fla. June 14, 2022) (finding the removal provision "can be severed from the remainder of the Act because the Social Security Administration can continue to fully function without the presence of the allegedly unconstitutional provision). As such, even if the provision unconstitutionally insulated Saul from removal, he was still properly appointed, and "there [is] no basis for concluding that any head of the [SSA] lacked the authority to carry out the function of the office," which would include delegating authority to ALJs to decide claims. *See Collins*, 141 S. Ct at 1788.

Further, to be entitled to retrospective relief in the form of a *de novo* hearing before a new ALJ, Jackson must show the removal provision resulted in "compensable harm." *See Collins*, 141 S. Ct. at 1788-89. This requires Jackson to demonstrate "that the unconstitutional provision actually caused [her] harm." *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) (declining to hold that the existence of a potentially unconstitutional removal provision alone tainted an ALJ's decision). In *Collins*, the Supreme Court set forth several examples of how an unconstitutional removal provision could cause compensable harm, none of which apply here. *Collins*, 141 S. Ct. at 1788-89. Further, it is important to note that in her concurrence in *Collins*, Justice Kagan highlighted that *Collins's* limited holding does not provide relief for plaintiffs complaining of an agency decision that would have occurred regardless of the President's removal power, such as individual Social Security decisions. *Collins*, 141 S. Ct. at 1801. Justice Kagan reasoned:

> Consider the hundreds of thousands of decisions the Social Security Administration (SSA) makes each year. The SSA has a single head with for-cause removal protection; so a betting person might wager that the agency's

> removal provision is next on the chopping block. But given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. That makes sense.

*Id.* The Court agrees.

Jackson has not shown that the result in her case would have been different if Saul had been removed prior to the ALJ's adjudication of Jackson's claim. As such, this appears to be one of the countless cases referenced by Justice Kagan where the result would not change had the Commissioner been subject to a different removal provision. *See L.M. v. Comm'r of Soc. Sec.*, No. 5:20-CV-304-MTT, 2021 WL 8268034, at *2 (M.D. Ga. Dec. 3, 2021) (finding the plaintiff had not shown compensable harm where he "did not argue that President Trump wanted to remove Saul from his position before the plaintiff's case was decided or that the result in his case would have been different if Saul had in fact been removed"). In short, because Jackson has not shown that the purportedly unconstitutional removal provision caused her compensable harm, she is not entitled to a *de novo* hearing before a new ALJ.[8]

---

[8] *See, e.g.*, *Herring*, 2022 WL 2128801, at *5 ("Plaintiff fails to show that absent the alleged unconstitutional provision, Plaintiff's claim would have been decided differently at either the ALJ or the Appeals Council level."); *Platt v. Comm'r of Soc. Sec.*, 20 Civ. 8382 (GWG), 2022 WL 621974, at *6 (S.D.N.Y. Mar. 3, 2022) (declining to remand a social security appeal because the plaintiff failed to show how the removal provision "impacted the ALJ's decision to reject her appeal"); *Vickery v. Comm'r of Soc. Sec.*, No. 5:21-CV-122-PRL, 2022 WL 252464, at *4 (M.D. Fla. Jan. 26, 2022) ("In this instance, following the examples in Collins, there are no allegations to suggest an effort by the President to remove the Acting Commissioner that were rebuffed by [the unconstitutional removal provision]."); *Perez-Kocher v. Comm'r of Soc. Sec.*, No. 6:20-CV-2357-GKS-EJK, 2021 WL 6334838, at *4 (M.D. Fla. Nov. 23, 2021) (finding that a plaintiff failed to state a claim upon which relief could be granted because the plaintiff could not establish that the Acting Commissioner's unconstitutional tenure protection caused compensable harm); *Helms v. Comm'r of Soc. Sec.*, No. 3:20-CV-589-MOC, 2021 WL 5710096, at *3 (W.D.N.C. Dec. 1, 2021) (finding that it was implausible that the Commissioner's protection from removal from office, "whether constitutional or not," could have affected the ALJ's decision); *Tibbets v. Comm'r of Soc. Sec.*, No. 2:20-CV-872-SPC-MRM, 2021 WL 6297530, at *6 (M.D. Fla. Dec. 21, 2021) ("[E]ven assuming *arguendo* that

## VI.  CONCLUSION

For the foregoing reasons, it is ORDERED that the Commissioner's decision is AFFIRMED. A separate final judgment will issue.

DONE this 25th day of October, 2022.

/s/ Stephen M. Doyle

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE

---

the removal provision is unconstitutional, it would not necessitate a rehearing of Plaintiff's claim because the provision is severable and there is no evidence to suggest a nexus between the removal provision and a compensable harm to Plaintiff.").